United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Clinton Jones, Sr., individually as the Parent of Corey Jones and as the Personal Representative of the Estate of Corey Jones, Plaintiff, <br><br> v. <br><br> City of Palm Beach Gardens and Nouman Raja, Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 16-81247-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

## Order

This matter is before the Court on Defendant City of Palm Beach Gardens's and Defendant Nouman Raja's motions to dismiss. (ECF Nos. 79, 83). The Plaintiff filed responses to both motions (ECF Nos. 85, 86), and the Defendants each filed a reply memorandum in support of their respective motions (ECF Nos. 87, 89). After careful consideration of the motions, the record, and the relevant legal authorities, the Court **grants in part and denies in part** the City's motion to dismiss (**ECF No. 79**) and **denies** Raja's motion to dismiss (**ECF No. 83**).

**1. Background**

In the early hours of October 18, 2015, Corey Jones was stranded on the side of the road. (ECF No. 78 at ¶¶ 11–12.) After a late-night performance with his band, his car had broken down on an off-ramp in Palm Beach County. (*Id.* at ¶ 12.) Jones tried to fix it, and a bandmate and a Florida Department of Transportation Road Ranger came to help, but to no avail. (*Id.* at ¶¶ 14–15.) Jones—cognizant of the expensive musical equipment that he was carrying—decided to stay with his car alone while he waited for a tow truck. (*Id.* at ¶¶ 17, 19.)

Nouman Raja was a newly hired officer with the City of Palm Beach Gardens. (*Id.* at ¶ 25.) On October 18, 2015, at 3:00 a.m., Raja began his plain-clothed overnight detail, to which he had been assigned just four days earlier. (*Id.* at ¶¶ 26, 31.) On this shift, Raja drove a large, white, unmarked van with blacked-out windows and no emergency lights. (*Id.* at ¶ 38.) Just fifteen minutes into his shift, Raja noticed Jones. (*Id.* at ¶ 36.) In his unmarked white van, Raja drove against traffic, crossed multiple lanes, and ultimately stopped headfirst in front of—and perpendicular to—Jones's car. (*Id.*)

Raja jumped out of the van, dressed in jeans, a baseball cap, and a brown shirt donning the NRA insignia. (*Id.* at ¶¶ 32, 41.) Neither Raja's clothes nor his van signaled that he was with the police, and Raja was not wearing a tactical vest nor was he carrying a police radio or any other police gear. (*Id.* at ¶ 41.)

At the time that Raja approached Jones, Jones had called, and was on hold with, roadside assistance. (*Id.* at ¶¶ 19, 44.) The roadside assistance operator recorded Raja's exchange with Jones. (*Id.* at ¶ 44.) Raja—without identifying himself as police—asked Jones if he was "good" three times, after which Raja directed Jones to "[g]et your fucking hands up." (*Id.*) Raja then shot at Jones. (*Id.* at ¶ 45.) Jones, confused and afraid, ran away from his vehicle into the grass nearby. (*Id.* at ¶ 46.) As Jones ran, Raja aimed and fired multiple shots, hitting and killing Corey Jones. (*Id.* at 48–49.) Ultimately, Raja was convicted of manslaughter while armed with a firearm and attempted first degree murder. (*Id.* at ¶ 51.)

## 2. Legal Standards

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

### 3. Analysis

The Plaintiff brings nine claims against the Defendants. The City now seeks to dismiss all claims against it: Count 3 (inadequate training, policies, and supervision under 42 U.S.C. § 1983), Count 5 (pre-shooting negligence), Count 7 (negligent decision to use a firearm), and Count 9 (battery, excessive and deadly force). Raja seeks to dismiss only one count: Count 4 (pre-shooting negligence). The Court will first consider the parties arguments concerning the Plaintiff's state-law claims, and then the Court will address the viability of the Plaintiff's § 1983 claim against the City.

### A. State-Law Claims

Florida has waived sovereign immunity for certain types of state-law tort actions, although the state has retained sovereign immunity where employees acted in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* Fla. Stat. § 768.28(9)(a). In such cases, individual suits against employees are available. *See id.* Because of this, section 768.28 "tends to cause plaintiffs to bring 'mutually exclusive' claims against a governmental entity and its employees." *See Dukes v. Miami-Dade Cnty.*, No. 05-22665-CIV, 2006 WL 8433284, at *2 (S.D. Fla. July 10, 2006) (Huck, J.) (citing *Bryan Media, Inc. v. City of St. Petersburg*, No. 8:05CV291MSS, 2005 WL 2371992, at *8 (M.D. Fla. Sept. 27, 2005)). The Plaintiff does so here. The Court will first address the extent to which the state-law tort claims survive against the City, and then the Court will address Raja's claim to statutory immunity.

#### 1. *Municipal Statutory Immunity*

While municipalities are generally immune from state-law tort liability, Florida has waived this immunity "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state." *See* Fla. Stat. § 768.28(1); *see also Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). However, such immunity remains if a plaintiff seeks to challenge the "exercise of basic governmental discretion, as opposed to the implementation of an already established policy." *See Lewis*, 260 F.3d at 1262. Similarly, municipalities retain their immunity in tort suits if the employee acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* Fla. Stat. § 768.28(9)(a). Therefore, at the pleading stage, the plaintiff must plausibly allege the elements of each claim, that section 768.28(9)(a) is met, and that the conduct at issue was "operational" as opposed to "discretionary." *See Lewis*, 260 F.3d at 1262.

The City primarily argues that the Plaintiff has not—and cannot—allege state-law claims against the City, as under no construction could the Plaintiff's allegations be construed as sounding in negligence. (ECF No. 79 at 6.) Rather, the City argues that it retained its statutory immunity, as Raja's acts can only be classified as intentional acts committed in bad faith, with malicious purpose, or in wanton and willful disregard. *See* Fla. Stat. § 768.28(9)(a). The Plaintiff counters that he merely brings tort claims against the City in the alternative, in the event that Raja's actions are not found to be in bad faith, with malicious purposes, or in wanton and willful disregard. (ECF No. 85 at 8.)

In general, parties may allege in the alternative. *See* Fed. R. Civ. P. 8(d)(2). And, while not a steadfast rule, Florida courts have opined that "the issue of whether [a government employee] acted in bad faith or with malicious purpose should be left to a fact-finder." *See Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1279 (S.D. Fla. 2012) (Martinez, J.) (discussing *McGhee v. Volusia*, 679 So.2d 729, 733 (Fla. 1996)). However, the Eleventh Circuit (in an unpublished opinion) has held that if, at the pleading stage, "the factual allegations can occur *only* from bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails[.]" *See Gregory v. Miami-Dade Cnty.*, 719 F. App'x 859, 873 (11th Cir. 2017) (emphasis added). Put differently, if the claims "can only be characterized as stating claims for acts done in bad faith or in a willful or wanton manner," then a municipality's statutory immunity remains intact. *Id.* at 874; *see also McGhee*, 679 So.2d at 733 & n.7 (noting that while questions of bad faith should go to the jury, "[t]here may be cases in which summary dismissal would be proper based on different facts").

While *Gregory* is unpublished, the Court believes it is compelled to follow it, as other courts in this District have done. *See Guirola v. Miami-Dade Cnty.*, No. 21-cv-24052, 2022 WL 1658829, at *2 (S.D. Fla. May 25, 2022) (Bloom, J.) (holding that after "[d]rawing all reasonable inferences in [p]laintiff's favor, the Court cannot construe these allegations as describing anything less than acts 'committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property'") (citing *Gregory*, 719 F. App'x at 874); *Gaviria v. Guerra*, No. 17-23490-CIV, 2018 WL 1876124, at *11 (S.D. Fla. Apr. 19, 2018) (Altonaga, J.) (dismissing claim against a municipal government, as, despite the plaintiff's alternative pleadings, the court "[could] not construe these allegations as describing anything less than acts 'committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property'") (citing *Gregory*, 719 F. App'x at 874).

Applying *Gregory*, the Court finds that the conduct that the Plaintiff alleges can only be construed as having been committed in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights,

safety, or property." *See* Fla. Stat. § 768.28(9)(a). Just as in *Gregory*, where the court concluded that "no version of the facts pled" permitted a finding that the police officer acted lawfully in shooting a child six times in the back while the child had not resisted or threatened the officer, here, Raja allegedly shot Jones multiple times as Jones ran away in fear. *See Gregory*, 719 F. App'x at 873–84; *see also Dukes*, 2006 WL 8433284, at *2 (dismissing a negligence claim against a municipality and holding that the officers' acts of shooting and kicking the plaintiff could "not be characterized as anything but acts" that fell within Fla. Stat. § 768.28(9)(a)). And as in *Gregory*, the Plaintiff alleges that Jones was not committing any criminal conduct and that Jones did not resist or threaten Raja at any point. *See Gregory*, 719 F. App'x at 873–84; *see also Gaviria*, 2018 WL 1876124, at *11 (dismissing negligence claim against municipality where the plaintiff was not resisting the officers yet the officers continued to beat the plaintiff).

As the Court finds that the Plaintiff's allegations can only be construed as acts "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," the Court must dismiss the Plaintiff's state-law tort claims against the City.

### 2. *Officer Immunity*

Raja only moves to dismiss Count 4, a claim for "pre-seizure/pre-shooting negligence." (ECF No. 83.) In Count 4, the Plaintiff argues that Raja's pre-shooting conduct was negligent, pointing to the lack of probable cause and Raja's conduct driving on the wrong side of the road, stopping perpendicular in front of Jones's car, wearing a hat that obstructed his face, and failing to identify himself as an officer. (ECF No. 78 at ¶¶ 93–94, 98.) Raja argues—as to this Count only—that statutory immunity attaches, as Raja's pre-shooting conduct occurred while he was on duty and was not done in a manner to divest him from immunity under section 768.28(9)(a). (ECF No. 83 at 5.)

Florida law shields police officers from liability in tort actions for conduct taken "in the scope of her or his employment." *See* Fla. Stat. § 768.28(9)(a). However, as explained above, officers have no immunity where they acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See id.* Therefore, courts must dismiss such claims unless the plaintiff makes "a good faith allegation in the complaint" that the public official either acted outside the scope of his employment or "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See Forrest v. Pustizzi*, No. 16-cv-62181, 2017 WL 2472537, at *6 (S.D. Fla. June 7, 2017) (Gayles, J.) (quoting *Brown v. McKinnon*, 964 So.2d 173, 175 (Fla. 3d DCA

2007)). In other words, at the pleading stage, a plaintiff must allege that the officer acted out of "ill will, hatred, spite, or an evil intent" or that the officer "knew, or reasonably should have known . . . that his or her conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *See id.* (internal citations omitted); *see also O'Boyle v. Thrasher*, 638 F. App'x 873, 879 (11th Cir. 2016).

As the Court held above, the Plaintiff's allegations can only be construed as Raja acting "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* Fla. Stat. § 768.28(9)(a). Therefore, the Court finds that the Plaintiff has sufficiently alleged that Raja acted in a manner that removes him from § 768.28(9)(a)'s immunity. As an initial matter, malice and intent may be alleged generally. *See Kist v. Hubbard*, 93 So.3d 1100, 1102 (Fla. Dist. Ct. App. 2012); Fed. R. Civ. P. 9(b). Moreover, the lack of probable cause permits an inference of bad faith or malice. *See Colonial Stores, Inc. v. Scarbrough*, 355 So.2d 1181, 1185 (Fla. 1977) ("It is recognized that malice may be inferred from the absence of probable cause."). Here, not only does the Plaintiff allege that Raja acted in bad faith, with malicious purpose, or in wanton disregard (ECF No. 78 at ¶ 98), but the Plaintiff also alleges that Raja—without probable cause—swerved across traffic, stopped in front of Jones's vehicle, and, without identifying himself, recklessly escalated the situation. *See Pagano v. Pekrol*, No. 19-60891-CIV, 2020 WL 12933751, at *3 (S.D. Fla. Feb. 19, 2020) (Smith, J.) (holding that allegations that an officer "acted without probable cause" are sufficient to overcome § 768.28(9)(a) immunity at the pleading stage). Such allegations plausibly give rise to a finding that Raja—prior to shooting Jones—acted, at least, in "a manner exhibiting wanton and willful disregard" of Jones's safety. *See Forrest*, 2017 WL 2472537, at *6. Therefore, the Court denies Raja's motion to dismiss, as the Plaintiff has plausibly alleged that Raja has no claim to section 768.28(9)(a)'s statutory immunity.

### B. Municipal Liability under 42 U.S.C. § 1983

Last, in Count 3, the Plaintiff alleges that the City violated 42 U.S.C. § 1983 as it failed to provide adequate training and supervision regarding the plain-clothed overnight detail, to which Raja had been assigned. (ECF No. 78 at ¶ 89.)

Any person acting under the color of state law who violates a constitutional right of another is liable for the injured party's losses. *See* 42 U.S.C. § 1983. This liability applies to a municipality when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, there are limits on this liability. "[A] municipality cannot be subjected to § 1983 liability based upon

theories akin to respondeat superior[;] . . . only deprivations arising from municipal custom or policy can result in municipal liability." *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985) (citing *Monell*, 436 U.S. at 694). In other words, "[w]hen an injury is inflicted as the result of governmental policy or custom, the government is responsible under § 1983." *Id.*

To adequately state a claim for municipal liability under § 1983, a plaintiff must plead (1) that their constitutional rights were violated, (2) the municipality had a "custom or policy that constituted deliberate indifference to that constitutional right," and (3) that policy or custom caused the violation. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The Court will walk through these three requirements to state a claim for municipal liability under section 1983, and as the Court finds that each have been sufficiently pled, the Court denies the City's motion to dismiss Count 3.

### 1. *Constitutional Violation*

As set forth above, plaintiffs must first plead that their constitutional rights were violated. *See McDowell*, 392 F.3d at 1289. The Court finds, and it does not appear that the City contests, that the Plaintiff pled that Jones suffered a constitutional violation. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005) ("Using deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment."). Therefore, this element is met.

### 2. *Custom or Policy that Constituted Deliberate Indifference*

Plaintiffs must also allege that the municipality had a "custom or policy that constituted deliberate indifference to [the plaintiff's violated] constitutional right." *See McDowell*, 392 F.3d at 1289. To allege a "custom or policy," a plaintiff must plead either "(1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). And to meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

As the Plaintiff here does not plead that an official promulgated policy controls, the Plaintiff must allege that the City had "an unofficial custom or practice shown through the repeated acts of a final policymaker for the county." *See Grech*, 335 F.3d at 1329. Such a custom can be established where "a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality[.]" *See City of*

*Canton*, 489 U.S. at 389. To meet this standard, the municipality must have had notice and "knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *See Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1323 (S.D. Fla. 2015) (quoting *Gold*, 151 F.3d at 1350); *City of Canton*, 489 U.S. at 388 (holding that a municipality may be liable for inadequate police training where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").

The City primarily argues that the Plaintiff has failed to plead any facts regarding past incidents demonstrating a need for training or the nature of any deficient training. The City argues that this is fatal and that the Plaintiff must allege past incidents giving "rise to the need for additional training" as well as the "identity of these alleged improper policies [and] why they are deficient." (ECF No. 79 at 13–14.)

However, the Plaintiff need not necessarily allege past incidents or specific policies. Ordinarily, plaintiffs must provide "some evidence of a pattern of improper training" and show that the municipality was "aware" of the deficiencies of its training. *See Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007)). However, courts have held that municipalities may be put on sufficient notice where the "need for such training [is] plainly obvious" to the relevant decisionmakers. *See Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990); *see also City of Canton*, 489 U.S. at 390 (holding that where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights . . . the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"). Moreover, plaintiffs need not necessarily allege a pattern of constitutional violations to state a claim. Rather, the Eleventh Circuit has held that "a single constitutional violation may establish municipal liability when there is 'sufficient independent proof that the moving force of the violation was a municipal policy or custom." *Favors v. City of Atlanta*, 849 F. App'x 813, 821 (11th Cir. 2021) (quoting *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993)); *see also Connick v. Thompson*, 563 U.S. 51, 63 (2011) (discussing the availability of "single-incident" municipal liability).

The Plaintiff alleges that the City failed to create policies regarding "how plain-clothed officers in unmarked vehicles were to approach, engage, stop and seize civilians during . . . overnight detail." (ECF No. 78 at ¶ 75.) The Plaintiff contends that this failure infected the "plain-clothed overnight detail," where officers purposefully wore civilian clothing and drove in unmarked cars at night. (*Id.* at ¶¶ 27, 79, 81.) The Plaintiff argues that the need for such policies and training was "obvious and highly predictable," as where plain-clothed overnight

officers in large, unmarked white vans with blacked-out windows stop civilians in the middle of the night, confrontations are "likely to escalate." (*Id.* at ¶¶ 80–81.)

The Court finds that the Plaintiff has stated a claim for municipal liability. While the Plaintiff does not allege a pattern of constitutional violations, the Plaintiff pleads that the City failed to train officers on plain-clothed overnight detail and that the need for such training was obvious. (ECF No. 78 at ¶¶ 80–81.) Courts across the country have recognized the danger inherent in plain-clothed officers effecting stops without identifying themselves as police. *See Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (noting that the officer "inappropriately escalated the violence level" as he was not in uniform, was not in a marked patrol car, was unable to call for back-up, and did not "adequately identify himself as a police officer"); *see also Doornbos v. City of Chicago*, 868 F.3d 572, 583 (7th Cir. 2017) ("Although some unusual circumstances may justify an officer's failure to identify himself in rare cases, it is generally not reasonable for a plainclothes officer to fail to identify himself when conducting a stop."); *Ayers v. Harrison*, 650 F. App'x 709, 715 (11th Cir. 2016) (holding that an officer used unconstitutional force when he approached in plain-clothes in an unmarked SUV, blocked the decedent's car, failed to identify himself as law enforcement, and fired his weapon). Moreover, courts widely recognize that isolated stops at night are inherently dangerous. *See Giddens v. Brooks Cnty., Ga.*, No. 21-11755, 2022 WL 836273, at *5 (11th Cir. Mar. 21, 2022) (noting that a "traffic stop [that] occurred at night in an isolated location" is an "objectively dangerous" situation); *United States v. Brown*, 273 F.3d 747, 748 (7th Cir. 2001) (noting that a "stop by a lone officer at night is even more dangerous") (emphasis omitted).

Combine these two inherently dangerous situations—plain-clothed officers without any visible indication that they are law enforcement on overnight detail—and the need for training, at the pleading stage, is plausibly "so obvious, and the inadequacy so likely to result in the violation of constitutional rights." *See Underwood*, 11 F.4th at 1333 (quoting *City of Canton*, 489 U.S. at 390). Therefore, as the need for such training was obvious, at this stage the relevant "policymakers of the [C]ity can reasonably be said to have been deliberately indifferent to the need" for such training. *See City of Canton*, 489 U.S. at 390. Therefore, for the reasons above, the Court finds that the Plaintiff has plausibly alleged an "unofficial custom or practice shown through the repeated acts of a final policymaker for the county." *See Grech*, 335 F.3d at 1329.

### 3. Caused the Violation

Last, as discussed above, a claim under section 1983 for municipal liability must establish that the municipality's policy or custom caused the constitutional violation. *See McDowell*, 392 F.3d at 1289. The Plaintiff alleges here that the

City's failure to establish policies and adequate training "led directly" to the decedent's murder. (ECF No. 78 at ¶ 89.) Indeed, had Raja been trained differently, the outcome of this encounter may have been different. For these reasons, the Plaintiff's section 1983 survives the City's motion to dismiss.

### 4. Conclusion

For the reasons set out above, the Court **grants in part and denies in part** the City's motion to dismiss (**ECF No. 79**) and **denies** Raja's motion to dismiss (**ECF No. 83**). The Court **grants** the City's motion to dismiss Counts 5, 7, and 9, but the Court **denies** the City's motion to dismiss Count 3.

**Done and ordered** in Miami, Florida, on June 16, 2022.

_____
Robert N. Scola, Jr.
United States District Judge