United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Clinton Jones, Sr., individually as the Parent of Corey Jones and as the Personal Representative of the Estate of Corey Jones, Plaintiff, <br><br> v. <br><br> City of Palm Beach Gardens and Nouman Raja, Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 16-81247-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

**Order**

This matter is before the Court on Plaintiff Clinton Jones, Sr.'s, motion for partial reconsideration of the Court's order on the Defendant City of Palm Beach Gardens' motion to dismiss. (ECF No. 110.) The City filed a response to the motion (ECF No. 111), and the Plaintiff filed a reply memorandum (ECF No. 112). After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **denies** the Plaintiff's motion for reconsideration (**ECF No. 110**.)

**1. Background**

Although the Court has extensively detailed the background of this matter before, it will review the allegations of the Plaintiff's Third Amended Complaint before addressing the Plaintiff's support for his motion for reconsideration. (Order on Mots. to Dismiss, ECF No. 92, at 1-2.)

In the early hours of October 18, 2015, Corey Jones was stranded on the side of the road. (Third Am. Compl., ECF No. 78, ¶¶ 11–12.) After a late-night performance with his band, his car had broken down on an off-ramp in Palm Beach County. (*Id.* ¶ 12.) Jones tried to fix it, and a bandmate and a Florida Department of Transportation Road Ranger came to help, but to no avail. (*Id.* ¶¶ 14–15.) Jones—cognizant of the expensive musical equipment that he was carrying—decided to stay with his car alone while he waited for a tow truck. (*Id.* ¶¶ 17, 19.)

Nouman Raja was a newly hired officer with the City of Palm Beach Gardens. (*Id.* ¶ 25.) On October 18, 2015, at 3:00 a.m., Raja began his plain-clothed overnight detail, to which he had been assigned just four days earlier. (*Id.* ¶¶ 26, 31.) On this shift, Raja drove a large, white, unmarked van with blacked-out windows and no emergency lights. (*Id.* ¶ 38.) Just fifteen minutes into his shift, Raja noticed Jones. (*Id.* ¶ 36.) In his unmarked white van, Raja drove

against traffic, crossed multiple lanes, and ultimately stopped headfirst in front of—and perpendicular to—Jones's car. (*Id.*)

Raja jumped out of the van, dressed in jeans, a baseball cap, and a brown shirt donning the NRA insignia. (*Id.* ¶¶ 32, 41.) Neither Raja's clothes nor his van signaled that he was with the police, and Raja was not wearing a tactical vest nor was he carrying a police radio or any other police gear. (*Id.* ¶ 41.)

At the time that Raja approached Jones, Jones had called, and was on hold with, roadside assistance. (*Id.* ¶¶ 19, 44.) The roadside assistance operator recorded Raja's exchange with Jones. (*Id.* ¶ 44.) Raja—without identifying himself as police—asked Jones if he was "good" three times, after which Raja directed Jones to "[g]et your fucking hands up." (*Id.*) Raja then shot at Jones. (*Id.* ¶ 45.) Jones, confused and afraid, ran away from his vehicle into the grass nearby. (*Id.* ¶ 46.) As Jones ran, Raja aimed and fired multiple shots, hitting and killing Corey Jones. (*Id.* ¶¶ 48–49.) Ultimately, Raja was convicted of manslaughter while armed with a firearm and attempted first degree murder. (*Id.* ¶ 51.)

The Plaintiff, Corey Jones's father, filed suit against the City and Raja. After extensive litigation and multiple amendments to the complaint, the City moved to dismiss the Plaintiff's claims against it in the Third Amended Complaint. The Court granted the City's motion with regards to the Plaintiff's claims for pre-shooting negligence (Count 5 of the Third Amended Complaint), negligent decision to use a firearm (Count 7), and battery, excessive and deadly force (Count 9) because Raja's conduct fit within a statutory exception to Florida's waiver of sovereign immunity. (Order on Mots. to Dismiss at 3, 10.) The Court denied the City's motion to dismiss the Plaintiff's claim against it for inadequate training, policies, and supervision (Count 3). (*Id.*)

The Plaintiff now moves for reconsideration of the Court's order dismissing Counts 5 and 7 of his Third Amended Complaint against the City. (Mot. at 1.) In doing so, the Plaintiff argues that the Court "misunderstood" the Plaintiff's claims in Counts 5 and 7. (*Id.* at 2-3.) He also cites "newly discovered evidence" regarding the City's alleged "pre-shooting" negligence based on the deposition testimony of two Palm Beach Gardens police officers, arguing that the officers' deposition testimony supports the opportunity to replead his claims against the City. (*Id.*)

In support of his motion, the Plaintiff points to the deposition testimony of Officers Nicolas Arlotta and Christopher Baez. The Plaintiff conducted depositions of both officers in September of 2022. (*Id.* at 3.) Officer Arlotta was working the night of the shooting, and Officer Baez had experience with the plain-clothes detail Raja had been assigned to that night. (*Id.* at 3-5; Resp. at 3.) Officers Arlotta and Baez testified that the City required Raja (and other officers assigned the plain-clothes overnight detail) to "stop and question individuals whom they perceived as 'suspicious,'" but the City never provided the officers any formal

training for the detail. (Mot. at 4-6, Ex. 1, Ex. 2.) Instead, the City only ever provided Raja an "'informal' conversation" regarding the detail before the night of the shooting. (*Id.* at 4-5, Ex. 1.)

The City responds that the motion for reconsideration is procedurally improper, the Court properly found the City to be immune from the Plaintiff's common law claims in its previous order, the officers' deposition testimony cannot be considered on a motion to dismiss, and the officers' testimony was available to the Plaintiff prior to the filing of the Third Amended Complaint. (Resp. at 1-2.) The City emphasizes that Officer Arlotta testified in a criminal deposition relating to the shooting in March of 2017, and Officer "Baez has been a well-publicized witness in this matter since 2018." (*Id.* at 3.)

### 2. Legal Standards

"A district court has the discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered." *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1222–23 (N.D. Ga. 2012) (citing Fed. R. Civ. P. 54(b) and *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)). Motions for reconsideration, whether considered under Rule 54(b) (like this one), Rule 59(b), or Rule 60(b), are generally all evaluated under the same standard. *Region 8 Forest Serv. v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993) ("We see no reason to apply a different standard when the party seeks reconsideration of a non-final order.") In addressing a motion to reconsider a prior decision, two opposing policies must be balanced: on the one hand, the desirability of finality, and on the other, the public interest in reaching the right result. *Civil Aero. Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 321 (1961). To balance these competing principles, courts generally permit reconsideration where there is newly discovered evidence, a manifest error of law or fact, or where justice so requires. *See In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999); *Vila v. Padron*, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (Altonaga, J.). A motion for reconsideration is not appropriately used as a vehicle to "relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of [the order]." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). "Motions for reconsideration are left to the sound discretion of the district court and are to be decided as justice requires." *Belmont Holdings*, 896 F. Supp. 2d at 1223.

### 3. Analysis

The Plaintiff's motion for reconsideration wrongly attempts to relitigate the Court's decision on the City's motion to dismiss. *Michael Linet, Inc.*, 408 F.3d at 763. The Plaintiff asserts that the motion is based on "newly discovered evidence," but what the motion truly seeks to do is re-attack the Court's determination that

the City retains sovereign immunity from the Plaintiff's common law claims. (Mot. at 1-2.) This is made clear by the Plaintiff's assertion that the Court "misunderstood" his claims for pre-shooting negligence (Count 5) and negligent decision to use a firearm (Count 7) against the City. (Mot. at 2.) The Plaintiff further argues that, based on Officers Arlotta's and Baez's deposition testimony, "a jury issue exists as to whether Raja's **pre-shooting** conduct was committed in bad faith, or merely as an unfortunate result of the City's flagrant flouting of its responsibilities to its citizens." (Mot. at 2 (emphasis in original).)

The Court did not misunderstand the Plaintiff's claims in Counts 5 and 7. The Court will briefly re-address its reasoning behind dismissing Counts 5 and 7 against the City to clarify why the Plaintiff's emphasis on "pre-shooting" conduct is irrelevant. The Court determined, and reaffirms here, that because the Third Amended Complaint pleads "factual allegations that can occur *only* from bad faith or malicious or wanton or willful conduct [by Raja], then the claim against [the City] fails." (Order on Mots. to Dismiss at 4 (citing *Gregory v. Miami-Dade Cnty.*, 719 F. App'x 859, 873 (11th Cir. 2017) (emphasis in original).)

The Court based its decision wholly on the Plaintiff's pleadings (which the Plaintiff had amended three times). (Order at 4-5.) The pleadings allege that Raja shot Clinton Jones in the back, without provocation, while Jones fled Raja. (Third Am. Compl. ¶¶ 44-49.) Jones fled because Raja drew his firearm after telling Jones to "[g]et [his] fucking hands up" and shot at Jones without provocation, all without Raja ever identifying himself as a police officer. (*Id.* at ¶¶ 44-46.) The Court conducted an extensive analysis in its order to explaining why Raja's conduct, as alleged, cannot possibly be viewed as anything other than conduct "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (Order on Mots. to Dismiss at 4-5); Fla. Stat. § 768.28(9)(a); *Gregory*, 719 F. App'x at 873-4. The Court need not repeat that analysis here. Suffice it to say, Raja's conduct plainly falls within Florida's statutory carve-out retaining sovereign immunity where officers act in bad faith, maliciously, or with "wanton and willful disregard" for human life. Fla. Stat. § 768.28(9)(a).

The Plaintiff's argument that the City's fault lies "pre-shooting" and can therefore be separated from Raja's conduct during the shooting is not supported by Florida law. Florida requires that its waiver of sovereign immunity, and the exceptions to it, be strictly construed. *Dep't of Fin. Servs. V. Barnett*, 262 So. 3d 750, 754 (Fla. 4th DCA 2018) (observing that "sovereign immunity waivers . . . must be strictly construed."). Part of that strict construction is that courts view the circumstances or occurrences that may give rise to sovereign liability as a "single occurrence" rather than a "separate occurrence" to the maximum extent possible. *See, e.g., id.* at 751, 754 (holding that, under Florida's statutory waiver of sovereign immunity, the murders of five children by the stepfather constituted

a single event even though the murders were not all committed at the same location or time.)

Similarly, the events of the night of Corey Jones's death cannot be neatly separated into "pre-shooting" and "during the shooting" such that the Plaintiff can maintain common law claims against the City independent of Raja's bad-faith, malicious conduct. *See id.*; *Gregory*, 719 F. App'x at 873-4. And even if Florida law allowed the events of the shooting to be pieced into separate occurrences, nothing the Plaintiff proffers in support of his motion supersedes or contradicts the Court's finding that Raja's actions can only constitute independent, bad-faith, malicious, and wanton conduct based on the Plaintiff's own allegations. (Order on Mots. to Dismiss at 4-5; Third Am. Compl. ¶¶ 44-49); *Gregory*, 719 F. App'x at 873-4. The proffered testimony of Officers Arlotta and Baez therefore changes nothing about the Court's analysis of the legal barriers to the Plaintiff's common law claims against the City.[1] As such, the Court finds no "clear error or manifest injustice" in its prior decision.[2] *Grasso v. Electrolux Home Prods., Inc.*, No. 15-20774-Civ, 2016 WL 2625746, at *2 (S.D. Fla. Mar. 24, 2016) (Scola, J.). Rather, the motion presents only attempts to "relitigate old matters." *Michael Linet, Inc.*, 408 F.3d at 763. The Court therefore declines to reconsider its order dismissing Counts 5 and 7 against the City. (Order on Mots. to Dismiss.)

### 4. Conclusion

For the reasons set out above, the Court **denies** the Plaintiff's motion for reconsideration (**ECF No. 110**).

**Done and ordered** in Miami, Florida, on November 7, 2022.

_____
Robert N. Scola, Jr.
United States District Judge

---

[1] The Court is also not convinced that the Plaintiff was sufficiently diligent in obtaining the testimony of Officers Arlotta and Baez, who have been known as witnesses in this matter since 2017 and 2018, respectively. *Banuchi v. City of Homestead*, No. 20-25133-Civ, 2021 WL 4264254, at *3 (S.D. Fla. Sept. 20, 2021) (Scola, J.) ("Indeed, it appears the evidence upon which [the plaintiff] now seeks to rely has been readily available, had she sought it, for years—accessible through public record requests as well as discovery."); (Resp. at 3.) Regardless, whether the Court considers the officers' testimony or not, the Court's legal determination that the City retains sovereign immunity from the Plaintiff's common law claims is unaffected.

[2] Because the Court finds that the Plaintiff's arguments are an attempt to re-litigate the motion to dismiss, the Court declines to address the remainder of the City's arguments.